**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

| | |
|---|---|
| **JOSE MANUEL SILVA ANTONIO,** | ) |
| | ) |
| **Petitioner,** | ) |
| | ) |
| **v.** | ) **CASE NO. 2:26-CV-00373-BL-CWB** |
| | ) |
| **FRANCISCO AYALA, et al.,** | ) |
| | ) |
| **Respondents.** | ) |

**RESPONDENTS' MOTION TO DISMISS THE PETITION**

Comes now, the Respondents, by and through Kevin P. Davidson, Acting United States Attorney, and respectfully submits this Motion to Dismiss the Habeas Petition filed by Petitioner Jose Manuel Silva-Antonio. The Petition should be dismissed for four reasons. First, the Court lacks jurisdiction over this matter because Mr. Silva-Antonio was in the Northern District of Alabama at the time the Petition was filed. Second, the Petition should be dismissed as moot because Mr. Silva-Antonio chose to be repatriated to Mexico and signed a declaration agreeing to be in ICE's custody until departure. Third, the Petition should be dismissed because Fourth Amendment claims concerning the propriety of Mr. Silva-Antonio's arrest may not be brought in a habeas action. Fourth, the Petition should be dismissed because it does not contain a verification by Mr. Silva-Antonio or a proper "Next Friend."

In its Order, the Court expressly requested certain information from the Respondents. *See generally* Doc. 10. While the answers are addressed in greater detail below, the Respondents wanted to provide a summary of the information at the beginning:

- Pursuant to *Hernandez Alvarez v. Warden, Federal Detention Center Miami*, --- F.4th ----, 2026 WL 1243395 (11th Cir. 2026), Mr. Silva-Antonio was arrested by a warrant pursuant to 8 U.S.C. § 1226 instead of § 1225. This fact and the *Hernandez Alvarez* case are now irrelevant because Mr. Silva-Antonio has opted for voluntary departure, waived any process due under § 1226, and is being held pursuant to 8 C.F.R. § 240.25(b).
- Mr. Silva-Antonio was in the Northern District of Alabama when the Petition was filed. He is currently in the Western District of Louisiana awaiting repatriation to Mexico.
- The Millbrook Police Department stopped Mr. Silva-Antonio due to his failure to wear a seatbelt. No citation was issued.
- Mr. Silva-Antonio's arrest warrant was issued by Supervisory Detention and Deportation Officer Charles Anderson.

## FACTS

### I. Mr. Silva's Arrest and Detention.

Mr. Silva-Antonio is a native and citizen of Mexico. Ex. 1, Decl. of Francisco Ayala at ¶ 3. This is the second time Mr. Silva-Antonio has been caught entering the Country illegally. *See id.* ¶¶ 4–5. Petitioner first entered the United States unlawfully in 1998. *Id.* ¶ 4. When he was apprehended, he was offered and accepted to be voluntarily returned to Mexico. *Id.* ¶ 5. At an unknown date, Mr. Silva-Antonio re-entered the United States. *Id.*

On May 12, 2026, Petitioner was stopped by the Millbook Police Department for driving without a seatbelt.[1] *Id.* ¶ 6. Millbrook police requested assistance from ICE due to Petitioner's immigration status. *Id.* Millbrook released Mr. Silva-Antonio into ICE custody. *Id.* The ICE officers on the scene conducted a warrantless arrest pursuant to 8 U.S.C. § 1357(a)(2). *See id.* ¶ 6.

Mr. Silva-Antonio was taken directly to the Montgomery ICE ERO. *See id.* ¶ 7. When it was determined that Mr. Silva-Antonio lacked immigration status or was otherwise removable, Supervisory Detention and Deportation Officer Charles Anderson issued a warrant for Mr. Silva-Antonio's arrest pursuant to 8 U.S.C. § 1226. *Id.* at ¶ 8 & Ex. A (Warrant for Arrest of Alien). The warrant was served personally on Mr. Silva-Antonio and its contents were read to him in Spanish. *Id.* at Ex. A.

Mr. Silva was offered voluntary departure pursuant to 8 C.F.R. § 240.25(a). *Id.* ¶ 9. Mr. Silva-Antonio took the offer and agreed to be repatriated to Mexico. *Id.* at ¶ 9 & Ex. B (Voluntary Departure Form). He received the I-210 Voluntary Departure and Verification of Departure form in English and Spanish. *Id.* at Ex. B. The form contains an addendum which reads, in part:

> ***I hereby knowingly, voluntarily, and intelligently waive my opportunity to file any and all applications for relief or protection***

[1] In its Order, the Court asked the United States to state whether a traffic stop resulted in the issuance of a complaint or citation. Doc. 10 at ¶ 2(e). The undersigned made calls to the Millbrook Police Department. It appears that no citation was issued for the stop.

> ***from removal, deportation, or exclusion under the immigration laws.*** I acknowledge that I do not have a fear of return to my country.
>
> ***I acknowledge that I will remain detained in DHS's custody pending departure.*** I will provide DHS with my passport or other travel documents, or I will actively assist DHS with obtaining travel documents.
>
> . . . .
>
> ***I understand the contents of this Declaration and acknowledge that it has been interpreted into my preferred language.***

*Id.* (emphasis added).

Mr. Silva-Antonio signed the voluntary departure forms in three places, including on the Spanish translation of the declaration. *Id.* Mr. Silva also signed a form agreeing that he:

- was in the United States illegally;
- faced no harm if he returned to Mexico;
- waived his right to a hearing before the Immigration Court;
- wished to return to Mexico as soon as possible; and
- knew he might be held in detention until his departure.

*Id.*

Mr. Silva-Antonio was transported to the Pickens County Detention Center. *Id.* ¶ 10. He arrived at 5:12 pm. *Id.* On information and belief, the Petition was filed at 5:17 pm. Thus, Mr. Silva-Antonio was in the Northern District of Alabama at the time this case was filed.

On May 15, 2026, he was transferred to the Pine Prairie ICE Processing Center in Pine Prairie, Louisiana. *See id.* ¶ 11. He remains there as of filing. *Id.* Pine Prairie is in Evangeline Parish, which is in the jurisdiction of the United States District Court for the Western District of Louisiana. Mr. Silva remains on track to be repatriated to Mexico in accordance with his choice.

## II. Mr. Silva-Antonio Is Detained Pursuant to 8 C.F.R. § 240.25(b).

It its Order, the Court asked the United States to state whether Mr. Silva was being held pursuant to 8 U.S.C. § 1225 or 8 U.S.C. § 1226. Doc. 10 at ¶¶ 2(a)–2(d). Mr. Silva is not being held under either statute. While Mr. Silva was arrested on the scene under 8 U.S.C. § 1357 and rearrested in Montgomery pursuant to 8 U.S.C. § 1226 at the Montgomery ERO, his status changed when he accepted voluntary departure. Section 1226 only applies "pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a).

Because Mr. Silva-Antonio has agreed to be repatriated to Mexico, there is no longer a pending decision as to his removal. Thus, § 1226 no longer applies and his detention is governed by 8 C.F.R. § 240.25(b). This section allows ICE to "attach to the granting of voluntary departure any conditions it deems necessary to ensure the alien's timely departure from the United States, including the posting of a bond, continued detention pending departure, and removal under safeguards." 8 C.F.R. § 240.25(b). ICE's decision to grant or not grant bond under this regulation

is discretionary. *See id.* As noted above, Mr. Silva acknowledged that he would be held in ICE custody until his departure and waived any right he had to seek relief from an Immigration Court or any other claims for relief under immigration law. Ex. 1, Decl. of Francisco Ayala at Ex. B.

## ARGUMENT

### I. THE COURT SHOULD DISMISS THE CASE FOR WANT OF JURISDICTION BECAUSE MR. SILVA-ANTONIO WAS IN THE NORTHERN DISTRICT OF ALABAMA WHEN THIS ACTION WAS FILED.

The Court lacks jurisdiction to hear Mr. Silva-Antonio's claims because he was not in the Middle District of Alabama when the case was filed. The proper venue for a § 2241 petition is the federal district where the inmate is confined at the time of filing. *See Rumsfeld v. Padilla*, 542 U.S. 426, 442 (2004) ("District courts are limited to granting habeas relief 'within their respective jurisdictions.' " (quoting 28 U.S.C. § 2241(a))); *United States v. Lassiter*, 812 F. App'x 896, 900 (11th Cir. 2020) (per curiam) ("Under the plain language of § 2241, 'jurisdiction lies in only one district: the district of confinement.' " (quoting *Rumsfeld*, 542 U.S. at 443)); *United States v. Michel*, 817 F. App'x 876, 879 (11th Cir. 2020) (per curiam) ("Section 2241 petitions may be brought only in the district court for the district in which the inmate is incarcerated." (quoting *Fernandez v. United States*, 841 F.2d 1488, 1495 (11th Cir. 1991))). Habeas petitions filed concerning an individual who was not in the jurisdiction at the time of filing should be dismissed

for lack of jurisdiction. *Morton v. United States*, No. CR 14-00260-KD-MU, 2022 WL 2070628, at *2 (S.D. Ala. June 8, 2022).

Mr. Silva-Antonio was in the Northern District of Alabama when this action was filed. He arrived in Pickens County at 5:12 pm. On information and belief, the Petition was filed at 5:17 pm.

The most direct route from the ERO Montgomery Facility to the Pickens County Detention Center is up Highway 82.[2] The Bibb County/Chilton County line is the border between the Northern and Middle Districts of Alabama. There is a Shell station in Lawley, Alabama, on the county line. It is 1:29 from that station to the Pickens County Detention Center.[3] Thus, Mr. Silva-Antonio left the Middle District of Alabama at approximately 3:43 pm. Because Mr. Silva-Antonio was not

[2] *See* Google Maps, *available at*, https://www.google.com/maps/dir/ICE+-+Department+of+Homeland+Security,+500+Interstate+Park+Dr+%23529,+Montgomery,+AL+36109/Pickens+County+Jail,+188+Cemetery+St,+Carrollton,+AL+35447/@32.8262026,-87.8544277,9z/data=!3m1!4b1!4m14!4m13!1m5!1m1!1s0x888c2b0079bb2d23:0x2a07cd4535995bb5!2m2!1d-86.2412058!2d32.3621547!1m5!1m1!1s0x8886635c0d95e8c9:0xde75b2c92f9c6c88!2m2!1d-88.0959691!2d33.260415!3e0?entry=ttu&g_ep=EgoyMDI2MDUxMy4wIKXMDSoASAFQAw%3D%3D (last visited May 19, 2026).

[3] *See* Google Maps, *available at*, https://www.google.com/maps/dir/Shell,+31+US-82,+Lawley,+AL+36793/Pickens+County+Jail,+188+Cemetery+St,+Carrollton,+AL+35447/@33.0695168,-87.864082,10z/data=!3m1!4b1!4m14!4m13!1m5!1m1!1s0x888f27973fca619f:0x36cbaf7c748447ee!2m2!1d-86.955375!2d32.837329!1m5!1m1!1s0x8886635c0d95e8c9:0xde75b2c92f9c6c88!2m2!1d-88.0959691!2d33.260415!3e0?entry=ttu&g_ep=EgoyMDI2MDUxMy4wIKXMDSoASAFQAw%3D%3D (last visited May 19, 2026).

in this District when the Petition was filed, the case should be dismissed for lack of jurisdiction.

## II. THE PETITION SHOULD BE DISMISSED AS MOOT BECAUSE MR. SILVA-ANTONIO HAS AGREED TO BE REPATRIATED.

This case should be dismissed as moot. "[M]ootness is jurisdictional" and arises when "events that occur subsequent to the filing of a lawsuit . . . deprive the court of the ability to give the plaintiff . . . meaningful relief." *Al Najjar v. Ashcroft*, 273 F.3d 1330, 1336 (11th Cir. 2001) (citations omitted). Mr. Silva-Antonio agreed to be repatriated to Mexico nearly three hours before the Petition was filed. In this agreement, he also waived any right he had to seek relief under immigration law in any administrative or judicial court. This agreement mooted the petition before it was filed.

Further, many allegations in the Petition appear to have been based solely on speculation and have no basis in fact. The Petition repeatedly alleges that Mr. Silva-Antonio was arrested and was held unlawfully pursuant to 8 U.S.C. § 1225 in violation of *Hernandez Alvarez v. Warden, Federal Detention Center Miami*, --- F.4th ----, 2026 WL 1243395 (11th Cir. 2026). It is unclear how any allegations that he was arrested under this section could have been verified as required by 28 U.S.C. § 2242 because Mr. Silva-Antonio was not arrested pursuant to § 1225.

Thus, any claim based on violations of that section should be dismissed as meritless.

Alternatively, Mr. Silva-Antonio alleged that he was arrested without a warrant or has been denied a "prompt bond hearing" in violation of 8 U.S.C. § 1226. Mr. Silva-Antonio was properly detained pursuant to § 1357 after he was released from Millbrook's custody. He was then promptly arrested again on a warrant issued pursuant to § 1226 in compliance with the recent *Hernandez Alvarez* opinion.[4]

Any claim brought concerning process due or a bond hearing required under § 1226(a) is moot. Section 1226(a) only applies "pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). By statute, voluntary departure is granted "in lieu of" being subjected to removal proceedings. 8 U.S.C. § 1229c(a)(1). There is no longer a pending decision concerning Mr. Silva-Antonio's removal because he agreed to be voluntarily deported. Thus, § 1226(a) no longer applies and any claims brought pursuant to that section are moot. *Boutinkhar v. Dir., U.S. Immigr. & Customs Enf't*, No. 4:25-CV-02802-DCN,

---

[4] The Petitioner was arrested in accordance with the law of the Eleventh Circuit because that was where he was detained and initially processed. If the Petitioner, this Court, or another court of competent jurisdiction sets aside the voluntary departure, Mr. Silva-Antonio's removal processes may be governed by the law of another circuit with a different interpretation of the Respondents' obligations under 8 U.S.C. § 1225. *See, e.g.*, *Buenrostro-Mendez v. Bondi*, 166 F.4th 494 (5th Cir. 2026). The Respondents do not waive their right to raise these arguments, if necessary, at a later date.

2026 WL 815824, at *4 (N.D. Ohio Mar. 25, 2026), *report and recommendation adopted,* No. 4:25 CV 2802, 2026 WL 1166493 (N.D. Ohio Apr. 29, 2026).

Any arguments that the initial arrest or the subsequent arrest pursuant to the warrant were improper are now moot because Mr. Silva-Antonio knowingly and voluntarily waived the process he was due under § 1226 or other claims for relief under immigration law when he agreed to be voluntarily deported pursuant to 8 C.F.R. § 240.25(a). His detention is now governed by 8 C.F.R. § 240.25(b). Because deportation under § 240.25(a) is voluntary and the procedures in § 240.25(b) are discretionary, petitioners held pursuant to § 240.25(b) are "ineligible for habeas relief." *Gutierrez Hidalgo v. Bullock*, No. 2:26-CV-02217-SHL-CGC, 2026 WL 1287136, at *1 (W.D. Tenn. May 11, 2026).

Further, the claims were mooted by Mr. Silva-Antonio's express waiver of his rights to a hearing before administrative or judicial bodies for relief or protection under immigration law. He also agreed to remain in ICE custody until his removal. In short, Mr. Silva-Antonio waived the rights asserted in the Petition hours before the Petition was filed. These waivers were even more knowing because Mr. Silva-Antonio has been through this process before. For these reasons, the Petition should be denied as moot.

## III. Fourth Amendment Challenges to Mr. Silva-Antonio's Initial Arrest May Not Be Brought in a Habeas Petition.

Mr. Silva-Antonio challenges the propriety of his arrest after his release from Millbrook's custody. Claims concerning Mr. Silva-Antonio's initial arrest under § 1357 are not properly brought in a habeas action.

Fourth Amendment claims like these are not cognizable in habeas because it attempts to raise a civil claim concerning the nature of his arrest—not a challenge to his ongoing detention. At most, this claim would amount to a *Bivens* claim against the arresting officers. *See Alvarez v. U.S. Immigr. & Customs Enf't*, 818 F.3d 1194, 1205-1213 (11th Cir. 2016). However, habeas claims and *Bivens* claims may not be brought in the same action. *See Corbin v. Dep't of Veteran Affairs*, No. 2:15-cv-1174, 2015 WL 10384134, at *2 (N.D. Ala. Dec. 11, 2015). "Although the scope of the writ of habeas corpus has been extended beyond that which the most literal reading of the statute might require, the Court has never considered it a generally available federal remedy for every violation of federal rights." *Lehman v. Lycoming Cty. Children's Servs. Agency*, 458 U.S. 502, 510, (1982). "[W]hatever the expanded scope of our jurisdiction may be, the remedy that habeas corpus provides remains tied to some form of relief from the petitioner's custody." *Arnaiz v. Federal Satellite Low*, 594 F.3d 1326, 1329 (11th Cir. 2010) (per curiam). Given that Petitioner's Fourth Amendment claim challenges only the nature of his arrest

and not his ongoing detention, the claim is not cognizable in habeas and should be denied.

Second, even if Mr. Silva Antonio's claim were generally cognizable in habeas, the Court lacks subject-matter jurisdiction over the claim. 8 U.S.C. § 1252(g) is a jurisdiction-stripping provision in the INA, which provides that

> [e]xcept as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory), . . . no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

8 U.S.C. § 1252(g). "When asking if a claim is barred by § 1252(g), courts must focus on the action being challenged." *Canal A Media Holding, LLC v. U.S. Citizenship & Imm. Servs.*, 964 F.3d 1250, 1257-58 (11th Cir. 2020). Section 1252(g) applies "to three discrete actions that the Attorney General may take: [the] 'decision or action' to '*commence* proceedings, *adjudicate* cases, or *execute* removal orders.'" *Reno v. American-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999) (emphasis in original).

The Eleventh Circuit's opinion in *Gupta v. McGahey*, 709 F.3d 1062 (11th Cir. 2013), makes clear that the Court lacks jurisdiction over Petitioner's claim concerning the circumstances of his arrest. There, a non-citizen raised Fourth Amendment claims under *Bivens*, alleging, *inter alia*, that ICE/ERO officers "wrongfully procur[ed] a warrant for his arrest" and "arrest[ed] him unlawfully."

*Gupta*, 709 F.3d at 1064. The district court dismissed the non-citizen's complaint, finding that 8 U.S.C. § 1252(g) deprived it of subject-matter jurisdiction. *Id.* On appeal, the Eleventh Circuit affirmed, finding that "securing a[] [non-citizen] while awaiting a removal determination constitutes an action taken to commence proceedings" within the purview of section 1252(g). *Id.* at 1065; *see also id.* (holding that the non-citizen's "claims that [the ICE/ERO agents] illegally procured an arrest warrant, that the agents illegally arrested him, and that the agents illegally detained him each arise from an action taken to commence removal proceedings.").

Here, like the non-citizen in *Gupta*, Petitioner challenges ICE/ERO's actions in arresting him, alleging that the arrest was unlawful. Petitioner's arrest "constitutes an action taken to commence proceedings" within the meaning of section 1252(g). *Gupta*, 709 F.3d at 1065. As this Court has previously held, district courts lack jurisdiction over such claims. *See Cho v. United States*, No. 5:13-cv-153-MTT, 2016 WL 1611476, at *7 (M.D. Ga. Apr. 21, 2016) ("Plaintiff's claims that she was falsely arrested when she was transferred into ICE custody . . . 'challenge[] the actions the agents took to commence removal proceedings—exactly the claims that § 1252(g) bars from the subject-matter jurisdiction of federal courts.'" (quoting *Gupta*, 709 F.3d at 1065 (alterations in original))). Petitioner's Fourth Amendment claim should be denied.

Third, even if Petitioner's Fourth Amendment claim is cognizable in habeas and the Court has jurisdiction, the claim lacks merit. Any Fourth Amendment claim against the ICE/ERO and CBP officials who arrested Petitioner may only be raised under *Bivens*. However, the Eleventh Circuit has declined to recognize a *Bivens* cause of action arising from a non-citizen's arrest and detention by immigration officials. *Alvarez*, 818 F.3d at 1205-1213.

Finally, even if there were any error in the initial arrest, this error was cured by his prompt re-arrest pursuant to a warrant at ICE ERO. For these reasons, any challenge to his initial arrest under § 1357 may not be challenged through the Petition.

## IV. <u>THE PETITION SHOULD BE DISMISSED WITHOUT PREJUDICE FOR ITS FAILURE TO BE VERIFIED BY MR. SILVA-ANTONIO OR AN AUTHORIZED NEXT FRIEND.</u>

Federal law requires habeas petitions to "be in writing signed and verified by the person for whose relief it is intended or by someone acting in his behalf." 28 U.S.C. § 2242. The person acting on the detained person's behalf is called a "next friend." *Whitmore v. Arkansas*, 495 U.S. 149, 163 (1990). "Next friend status is not automatic, but instead the would-be next friend must first prove that the real party in interest cannot pursue his own cause due to some disability, such as mental incompetence, and must show some relationship or other evidence that demonstrates the next friend is truly dedicated to the interests of the real party in

interest." *Ford v. Haley*, 195 F.3d 603, 624 (11th Cir. 1999) (cleaned up). An attorney may serve as next friends where they have a long history of representing the client. *Id.*

Mr. Silva-Antonio did not verify the Petition. *See* Doc. 1 at 36. It was verified by Petitioner's counsel after discussion "with Petitioner's family members" and document review. *Id.* While the Petition alleges several allegations based on information provided by Petitioner's family, there is no indication that Petitioner was consulted before the Petition was filed. *Id.* at ¶¶ 1 & 27. This lack of communication could explain why the Petition seeks relief Mr. Silva-Antonio had already expressly waived before the Petition was filed. It could also explain the factual errors in the Petition including the allegations that he was arrested pursuant to § 1225.

More fundamentally, the Petition fails to state (1) who Mr. Silva-Antonio's next friend is; (2) that Mr. Silva-Antonio is unavailable; and (3) facts showing that the next friend is dedicated to Mr. Silva-Antonio's cause. If Petitioner's counsel or a family member purports to be the next friend, that individual should be expressly identified and justify the need for next friend standing in this action by showing that the relief sought is relief Mr. Silva himself wants.

While Petitioner, on repleading, can likely cure the defects in the Petition, the lack of these details will prejudice the United States should the matter proceed

to discovery. Thus, the Petition should be dismissed without prejudice with instructions to explicitly plead next friend standing.

## CONCLUSION

Wherefore, the Respondents respectfully request the Court to dismiss the Petition.

Respectfully submitted this 21st day of May 2026.

KEVIN P. DAVIDSON
Acting United States Attorney

By: */s/Stephen Wadsworth*
STEPHEN D. WADSWORTH
Assistant United States Attorney
Bar Number: ASB 9808 E47W
United States Attorney's Office
Middle District of Alabama
P.O. Box 197
Montgomery, AL 36101-0197
Telephone: 334-223-7280
Facsimile: 334-223-7201
Email: Stephen.Wadsworth@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on May 21, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

/s/Stephen D. Wadsworth
Assistant United States Attorney