**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF ALABAMA**

| | | |
|---|---|---|
| JOSE MANUEL SILVA ANTONIO,<br><br>Petitioner,<br><br>vs.<br><br>FRANCISCO AYALA, *ICE Alabama Assistant Field Office Director*<br>MELLISSA HARPER, *ICE New Orleans Field Office Director*;<br>TODD LYONS, *in his official capacity as Acting Director of Immigration and Customs Enforcement*; and<br>MARKWAYNE MULLIN, *Secretary of Homeland Security; and*<br>TODD BLANCHE, *U.S. Attorney General.*<br><br>Respondents. | ) | CASE NO.:<br>2:26-cv-373-BL-CWB |

**PETITIONER'S RESPONSE IN OPPOSITION TO RESPONDENTS' MOTION TO DISMISS, REQUEST FOR IMMEDIATE RELEASE, REQUEST TO DECLARE PURPORTED VOLUNTARY DEPARTURE INVALID OR ORDER DHS TO RESCIND/REVOKE IT, AND ALTERNATIVE REQUEST TO TRANSFER**

Petitioner Jose Manuel Silva Antonio respectfully opposes Respondents' Motion to Dismiss. Respondents seek dismissal based on alleged lack of jurisdiction, mootness through purported voluntary departure, non-cognizability of arrest-related claims in habeas, and alleged verification or "next friend" defects. The motion should be denied. Respondents' own evidence establishes that ICE conducted a warrantless interior immigration arrest after the Millbrook traffic stop, transported Petitioner to the Montgomery Hold Room, and only later issued and served a Form I-200 administrative

warrant in Montgomery. Ayala Decl. ¶¶ 6–8; ECF Doc. 11-2. That sequence violates the statutory framework alleged in the Petition: 8 U.S.C. § 1226(a) requires a warrant for an interior civil immigration arrest, and 8 U.S.C. § 1357(a)(2) permits a warrantless arrest only where the person is likely to escape before a warrant can be obtained. Respondents identify no individualized exigent circumstances supporting a conclusion that Petitioner was likely to escape before a warrant could be obtained.

Petitioner remains detained, disputes that he knowingly and voluntarily accepted voluntary departure, and disputes that he knowingly and voluntarily waived habeas rights or agreed to remain detained pending departure. Petitioner is in the process of preparing a declaration stating that he did not understand the nature and consequences of the alleged voluntary-departure paperwork, did not intend to waive his rights, and did not voluntarily agree to leave the United States. Petitioner further wishes to present live testimony in this habeas case concerning the circumstances under which he was presented with, translated, and asked to sign any voluntary-departure or waiver documents.

The Court should deny dismissal, order Petitioner's immediate release, and declare the purported voluntary departure invalid. In the alternative, the Court should order Respondents to rescind or revoke the voluntary departure, refer Petitioner for removal proceedings and custody review under the proper statute, and prohibit removal while this case remains pending. If the Court concludes that the Middle District is not the proper forum because Petitioner was allegedly booked into Pickens County minutes before filing, the Court should transfer this action to the Northern District of Alabama

rather than dismiss it. Respondents, through AUSA Wadsworth, do not oppose transfer, while reserving the right to contest jurisdiction or venue in the Northern District of Alabama.

## I. RELEVANT FACTS

Petitioner is Jose Manuel Silva Antonio, A075-828-042. Ayala Decl. ¶ 2; ECF Doc. 11-2; ECF Doc. 11-3. Respondents identify him as a native and citizen of Mexico. Ayala Decl. ¶ 3. On May 12, 2026, Petitioner was stopped by the Millbrook Police Department in Alabama. Ayala Decl. ¶ 6. Respondents assert the stop was for driving without a seatbelt, but they also state that no citation was issued. ECF Doc. 11 at 2–4. Petitioner disputes the asserted basis for the stop and maintains that he committed no traffic or driving offense, was wearing his seatbelt, drove safely, and received no traffic ticket or criminal citation. Respondents admit that ICE conducted a warrantless arrest after the traffic stop. Ayala Decl. ¶ 6; ECF Doc. 11 at 3. Respondents further state that Petitioner was taken to the Montgomery Hold Room for processing and that ICE issued and served the Form I-200 only thereafter. Ayala Decl. ¶¶ 7–8. The Form I-200 attached by Respondents is dated May 12, 2026, and its certificate of service states that it was served in Montgomery, Alabama. ECF Doc. 11-2. Petitioner maintains that he complied with officer commands, did not flee, and remained still even when a co-worker ran, while guns were pointed at him and others with their hands raised. Those facts negate any claim that he was likely to escape before an administrative warrant could be obtained.

Respondents also rely on voluntary-departure documents executed on May 12, 2026. Ayala Decl. ¶ 9; ECF Doc. 11-3. The I-210 states that DHS granted voluntary

departure on May 12, 2026 and required departure by June 12, 2026. ECF Doc. 11-3. The addendum states that Petitioner waived applications for relief or protection, acknowledged no fear of return, and agreed to remain detained pending departure. ECF Doc. 11-3.

Petitioner disputes that he knowingly, voluntarily, or intelligently accepted voluntary departure or any associated conditions. He speaks only Spanish, relied on interpretation, and asserts that he did not receive a full, accurate explanation of the forms or of the rights allegedly waived. He further asserts that he believed the paperwork related to transfer and a future work-permit process, and that he would not have signed had he understood the documents' true nature. Petitioner is in the process of securing a detailed declaration to that effect and wishes to offer live testimony in this habeas proceeding regarding the circumstances of his purported waiver.

## II. IMMEDIATE RELEASE IS WARRANTED BECAUSE THE ARREST WAS WARRANTLESS AND UNSUPPORTED BY STATUTORY EXIGENCY

Respondents' own submissions establish the dispositive sequence: ICE conducted a warrantless arrest after the Millbrook traffic stop, transported Petitioner to the Montgomery Hold Room, and only afterward issued and served a Form I-200 administrative warrant. Ayala Decl. ¶¶ 6–8; ECF Doc. 11-2; ECF Doc. 11 at 3. Respondents expressly acknowledge that ICE conducted the on-scene arrest without a warrant pursuant to 8 U.S.C. § 1357(a)(2). Ayala Decl. ¶ 6; ECF Doc. 11 at 3. The Form I-200 attached by Respondents confirms that the warrant was served in Montgomery,

Alabama, after Petitioner had already been seized and transported there. ECF Doc. 11-2.

That sequence matters. Section 1226(a) authorizes immigration arrest and detention in the interior of the United States only "on a warrant issued by the Attorney General." 8 U.S.C. § 1226(a). Section 1357(a)(2) creates only a narrow exception to that warrant requirement. It permits a warrantless civil immigration arrest only where the immigration officer has reason to believe both that the person is in the United States in violation of immigration law and that the person is likely to escape before a warrant can be obtained. 8 U.S.C. § 1357(a)(2).

The implementing regulations confirm the same rule. Under 8 C.F.R. § 287.8(c)(2)(i), an arrest may be made only when the designated immigration officer has reason to believe that the person to be arrested is illegally in the United States. Under 8 C.F.R. § 287.8(c)(2)(ii), a warrant of arrest must be obtained unless the officer has reason to believe that the person is likely to escape before a warrant can be obtained. Thus, the statute and regulation require two separate showings: probable cause as to removability and probable cause as to likely escape before a warrant can be obtained.

The "reason to believe" standard under § 1357(a)(2) is equivalent to probable cause. See *United States v. Quintana*, 623 F.3d 1237, 1239–41 (8th Cir. 2010); *Davila v. United States*, 247 F. Supp. 3d 650, 663–64 (W.D. Pa. 2017); *Orellana v. Nobles County*, 230 F. Supp. 3d 934, 944–46 (D. Minn. 2017); *Creedle v. Miami-Dade County*, 349 F. Supp. 3d 1276, 1293–94 (S.D. Fla. 2018). Accordingly, ICE could not lawfully dispense with the warrant requirement merely by asserting that Petitioner lacked lawful immigration status. It also had to possess individualized probable cause that Petitioner was likely to escape before an

administrative warrant could be obtained.

Respondents identify no such facts. They state only that Millbrook police stopped Petitioner, that ICE responded because of his immigration status, and that ICE conducted a warrantless arrest after the traffic stop. Ayala Decl. ¶ 6; ECF Doc. 11 at 3. That is insufficient as a matter of law. Probable cause as to removability does not itself establish probable cause that a person is likely to escape before a warrant can be obtained. See *Orellana*, 230 F. Supp. 3d at 946; *United States v. Pacheco-Alvarez*, 227 F. Supp. 3d 863, 889–90 (S.D. Ohio 2016).

Courts applying § 1357(a)(2) have repeatedly held that the likelihood-of-escape requirement is a real and independent statutory limitation. In *Pacheco-Alvarez*, the court held that ICE officers may make warrantless arrests for suspected immigration violations only when they have both probable cause for the arrest and probable cause that the subject is likely to escape before a warrant can be obtained. 227 F. Supp. 3d at 889. The court emphasized that the flight-risk requirement is not "mere verbiage" and that the Supreme Court treated it as a genuine limitation on immigration officers' warrantless-arrest authority in *Arizona v. United States*, 567 U.S. 387 (2012). Id. In *Orellana*, the court likewise held that, without any showing that the person was likely to escape before a warrant could be secured, a warrantless arrest under § 1357(a)(2) violated the Fourth Amendment. 230 F. Supp. 3d at 946.

Here, the facts alleged show the opposite of statutory exigency. Petitioner was compliant, remained on scene, did not flee, and was surrounded by armed officers. The fact that another person allegedly ran cannot supply individualized probable cause that

Petitioner himself was likely to escape. Section 1357(a)(2) requires a particularized assessment of the person arrested, not group suspicion, generalized assumptions, or guilt by association. See *Mountain High Knitting, Inc. v. Reno*, 51 F.3d 216, 218 (9th Cir. 1995); *Pacheco-Alvarez*, 227 F. Supp. 3d at 889–90; *Orellana*, 230 F. Supp. 3d at 946.

Nor can Respondents satisfy § 1357(a)(2) by pointing to Petitioner's alleged immigration status. The statute already separately requires reason to believe the person is in violation of immigration law. If alleged removability alone were enough to establish likely escape, the second requirement would be meaningless. Courts have rejected that reading. See *Moreno v. Napolitano*, 213 F. Supp. 3d 999, 1006–08 (N.D. Ill. 2016); *Orellana*, 230 F. Supp. 3d at 946; *Pacheco-Alvarez*, 227 F. Supp. 3d at 889–90.

Respondents' own chronology also undermines any claim of exigency. ICE was able to transport Petitioner to the Montgomery Hold Room and then issue and serve a Form I-200 there. Ayala Decl. ¶¶ 7–8; ECF Doc. 11-2. If ICE could obtain and serve an administrative warrant after transporting Petitioner to Montgomery, Respondents must explain why a warrant could not have been obtained before ICE arrested him or before any custodial seizure by ICE. Respondents provide no such explanation.

The later-issued Form I-200 did not retroactively cure the unlawful arrest. The legality of a warrantless arrest depends on whether the statutory and constitutional prerequisites existed at the moment of seizure. See *Davila*, 247 F. Supp. 3d at 665. Respondents' declaration states that the Form I-200 was issued and served after Petitioner was taken to the Montgomery Hold Room. Ayala Decl. ¶¶ 7–8. The Form I-200's certificate of service confirms service in Montgomery, Alabama. ECF Doc. 11-2. A warrant generated after the

seizure cannot supply the missing statutory authority for the seizure itself.

The post-arrest regulations reinforce this point. Under 8 C.F.R. § 287.3, an alien arrested without a warrant must be examined by an officer other than the arresting officer, unless no other qualified officer is readily available and taking the person before another officer would cause unnecessary delay. The same regulation requires a custody determination within 48 hours unless voluntary departure has been granted. 8 C.F.R. § 287.3(d). These post-arrest procedures do not eliminate the threshold requirement that the warrantless arrest comply with § 1357(a)(2) in the first place. They assume a warrantless arrest authorized by the statute; they do not create authority for one.

Respondents' position would render the statutory warrant requirement meaningless. If ICE could arrest first, transport the person to an ICE facility, and issue an administrative warrant later in every interior case, then § 1357(a)(2)'s "likely to escape before a warrant can be obtained" limitation would do no work. Congress did not write a warrant requirement subject to automatic post hoc cure. The statutory structure requires ICE either to obtain a warrant under § 1226(a) or to satisfy the narrow warrantless-arrest exception in § 1357(a)(2). Respondents did neither.

Because Respondents lacked a warrant at the moment of arrest and have not identified individualized probable cause that Petitioner was likely to escape before a warrant could be obtained, the arrest exceeded the narrow authority granted by § 1357(a)(2). The resulting custody began without statutory authority and in violation of the Fourth Amendment's prohibition on unreasonable seizures.

This claim is properly before the Court because Petitioner challenges present custody,

not merely a completed past arrest. Petitioner does not seek damages for a past Fourth Amendment violation. He seeks habeas relief from ongoing immigration detention that began with an unlawful warrantless seizure and is now being justified by paperwork generated only after that seizure. Habeas is the proper vehicle to test the legality of present custody and to obtain release from unlawful detention.

Accordingly, if this Court reaches the merits, it should order Petitioner's immediate release. At minimum, Respondents' motion to dismiss should be denied because their own evidence establishes a warrantless arrest followed by a later-issued Form I-200, and they have identified no individualized facts showing that Petitioner was likely to escape before a warrant could be obtained.

## III. SIGNING VOLUNTARY DEPARTURE PAPERWORK DOES NOT DEFEAT HABEAS RELIEF OR AUTHORIZE CONTINUED CUSTODY

Respondents' mootness and waiver theories depend heavily on treating the May 12 paperwork as a valid, conclusive waiver. That position is legally and factually unsustainable.

First, DHS voluntary departure requires an actual, knowing request and agreement. Under 8 C.F.R. § 240.25(c), DHS may not grant voluntary departure unless the noncitizen requests voluntary departure and agrees to its terms and conditions. Under 8 C.F.R. § 240.25(b), DHS may impose conditions on voluntary departure, including continued detention pending departure. Under 8 C.F.R. § 240.25(f), a DHS voluntary-departure grant may be revoked if it is later determined that the application should not have been

granted.

Petitioner disputes that he knowingly requested voluntary departure or knowingly agreed to remain detained pending departure. He maintains that he did not receive full interpretation or adequate explanation of the forms, that he was told only to sign, and that he did not understand he was purportedly waiving his right to see an immigration judge, pursue protection, or continue this habeas action. He is preparing a sworn declaration and intends to offer live testimony to that effect at a Show Cause or TRO hearing. At the Rule 12 stage, those factual assertions must be accepted as true, and the conflict between Respondents' forms and Petitioner's account cannot be resolved against him on a motion to dismiss.

Second, federal habeas courts look to the reality of restraint on liberty, not to labels. See *Hensley v. Municipal Court*, 411 U.S. 345, 351 (1973). Even if Petitioner signed paperwork referencing voluntary departure, he remains in ICE custody and continues to suffer a concrete restraint on his liberty. That ongoing detention keeps his habeas case live and within this Court's jurisdiction.

Recent habeas decisions underscore that signing voluntary-departure paperwork—whether before DHS via Form I-210 or via an Immigration Judge—does not nullify habeas rights, does not automatically moot a habeas petition, and does not excuse noncompliance with a federal habeas court's release or bond-hearing orders:

- In *Emilio P. v. Bondi*, No. 26-cv-850, 2026 WL 593785, at *6–7 (D. Minn. Mar. 2, 2026), the court considered an I-210 administrative voluntary-departure agreement. It held that the paperwork did not waive the detainee's habeas rights and did not

excuse DHS from complying with a federal habeas order. The court emphasized that "nothing in the I-210 Form or in the voluntary departure process can be interpreted as a waiver of a detainee's habeas rights," and enforced its order requiring release/bond processes notwithstanding the signed voluntary-departure form.

- In *Aliosni G.P. v. Warden*, No. 2:26-cv-1278, 2026 WL 1266264 (E.D. Cal. May 8, 2026), the court ordered release even while a voluntary-departure order was on appeal, rejecting the idea that voluntary departure eliminated statutory or due process limits on detention.
- In *Robert C.S. v. Warden*, No. 1:26-cv-3436, 2026 WL 1453541 (E.D. Cal. May 22, 2026), the court ordered release on due process grounds where no bond hearing was provided and the IJ's voluntary-departure order was not yet final, expressly noting that "an agreement to leave the country does not extinguish Petitioner's liberty while he is here."
- In *Tellez Fuga v. Warden*, No. 2:26-cv-654, 2026 WL 1396685 (E.D. Cal. May 19, 2026), the court explained that detention continues under 8 U.S.C. § 1226(a) while a voluntary-departure order is on appeal and ordered a bond hearing.

These decisions confirm two points highly relevant here: (1) signing voluntary-departure paperwork does not extinguish a detainee's habeas rights or eliminate the court's authority to grant release; and (2) continued detention in the shadow of voluntary departure remains subject to statutory and constitutional limits, including the right to seek habeas relief and to contest unlawful or arbitrary custody.

Moreover, the Supreme Court in *Dada v. Mukasey*, 554 U.S. 1, 21 (2008), recognized that a noncitizen must be permitted an opportunity to withdraw from a grant of voluntary departure, provided the request is made before expiration of the departure period. Here, Petitioner explicitly seeks to rescind or revoke any purported voluntary departure before any departure deadline and contests that he ever knowingly requested it in the first place.

Respondents' own Form I-826 also undermines mootness: it informs individuals that a person who chooses return may change his mind and request a hearing before an immigration judge at any time before departure. ECF Doc. 11-3 at 5. Petitioner, through counsel and soon via his own declaration and live testimony, has done precisely that—he has changed his mind and seeks to remain in the United States and pursue his rights rather than depart.

Thus, even taking Respondents' exhibits at face value, federal law and persuasive authority make clear that: (a) voluntary-departure paperwork does not waive habeas rights; (b) any waiver must be knowing, voluntary, and intelligent; (c) doubts about voluntariness are factual disputes inappropriate for resolution at the motion-to-dismiss stage; and (d) continued custody before departure remains subject to judicial review.

## IV. THE PETITION IS NOT MOOT

Habeas jurisdiction persists so long as the petitioner remains "in custody" under restraints "not shared by the public generally" and seeks relief from that restraint. *Hensley*, 411 U.S. at 351. Respondents concede Petitioner remains detained. Their position

is essentially that the legal label of his custody changed once he signed voluntary-departure paperwork. A changed label is not release.

Because Petitioner remains in ICE custody and challenges that ongoing detention, his case is not moot. Respondents bear the burden of establishing mootness, and they have not shown that the Court can no longer grant meaningful relief. The Court can grant precisely the kind of relief other courts have granted in analogous circumstances: release, a bond hearing, recission or revocation of voluntary departure, or other declaratory and injunctive relief ensuring lawful custody.

## V. THE ARREST AND DETENTION CLAIMS ARE COGNIZABLE IN HABEAS

Petitioner does not ask this Court to adjudicate removability, grant discretionary immigration relief, or review a final order of removal. He challenges only the legality of his present civil immigration custody—both at its inception (the warrantless arrest without statutory exigency) and now (ongoing detention grounded on a purported voluntary departure he did not knowingly accept).

Respondents contend that arrest-related claims belong in a damages action, not in habeas. That mischaracterizes the relief sought. Petitioner seeks release from present custody that began with an unlawful seizure and is being continued on the basis of a contested, coerced waiver. That is the core of habeas.

Nor does 8 U.S.C. § 1252(g) bar this Court's review. Petitioner does not ask the Court to review a discretionary decision to commence proceedings, adjudicate removal, or execute a final removal order. He asks whether Respondents have legal authority to

hold him in civil custody under the circumstances presented. That question lies squarely within habeas.

## VI. THE COURT SHOULD REJECT DISMISSAL FOR LACK OF JURISDICTION, OR, ALTERNATIVELY, TRANSFER RATHER THAN DISMISS

Respondents assert that Petitioner arrived at the Pickens County Detention Center at approximately 5:12 p.m. and that the Petition was filed at approximately 5:17 p.m. Ayala Decl. ¶ 10; ECF Doc. 11 at 4, 6–8. Based on that five-minute interval, Respondents argue that Petitioner was physically located in the Northern District of Alabama at the moment of filing and that this Court therefore lacks habeas jurisdiction under the district-of-confinement rule.

The Court should reject dismissal. Although *Rumsfeld v. Padilla*, 542 U.S. 426, 442–43 (2004), sets forth the ordinary rule that a core habeas petition challenging present physical custody is filed in the district of confinement and names the immediate custodian, *Padilla* also recognizes that habeas jurisdiction cannot be administered in a way that allows the government to defeat meaningful access to the writ by moving a detainee while counsel is attempting to locate him and file emergency habeas relief. The ordinary district-of-confinement rule assumes that counsel knows, or reasonably can know, where the detainee is being held and who the immediate custodian is. That assumption does not hold where the government's own transfer activity makes the detainee's location and custodian practically unknowable at the time of filing.

This is such a case. The operative events giving rise to the Petition occurred in the

Middle District of Alabama: the Millbrook stop, ICE's response, Petitioner's transport to the Montgomery Hold Room, processing in Montgomery, service of the Form I-200 in Montgomery, and execution of the challenged voluntary-departure paperwork through the ERO Montgomery Sub Office. Ayala Decl. ¶¶ 6–9; ECF Doc. 11-2; ECF Doc. 11-3. Counsel filed under emergency conditions while Petitioner was in ICE custody, being rapidly moved, and while no reliable ICE locator information was available. The Petition itself explained that counsel had been unable to confirm Petitioner's location through the ICE online locator minutes before filing. ECF Doc. 1 ¶ 1. Respondents now rely on a five-minute window—created entirely by ICE's transfer of Petitioner away from Montgomery—to argue that this Court was divested of jurisdiction before counsel could obtain reliable location information.

The unknown-custodian exception applies in these circumstances. Courts addressing rapidly transferred immigration detainees have recognized that strict application of the immediate-custodian and district-of-confinement rule is inappropriate where the government's own conduct makes the detainee's location or custodian unknown or unknowable at the time counsel files. See, e.g., *Suri v. Trump*, 785 F.Supp.3d 128 (E.D. Va. 2025); *Ozturk v. Trump*, 779 F.supp.3d 462 (D. Vt. 2025). That exception is consistent with *Padilla*, which distinguished ordinary cases from circumstances where the government is not forthcoming about the detainee's location or where transfer practices make it difficult for counsel to determine where the petition should be filed. See *Padilla*, 542 U.S. at 455–56 (Kennedy, J., concurring). It is also consistent with the historic purpose of habeas corpus: the writ must remain available to test the legality of executive detention

and should not be defeated by government-controlled movements occurring while counsel is trying to file.

Here, counsel filed in the district where Petitioner's presence and custody were last reasonably connected and where the challenged conduct occurred. Petitioner had been taken to the Montgomery Hold Room, processed in Montgomery, served with the Form I-200 in Montgomery, and placed into the challenged voluntary-departure process through the ERO Montgomery Sub Office. Ayala Decl. ¶¶ 7–9; ECF Doc. 11-2; ECF Doc. 11-3. At the time counsel filed, ICE's public locator did not provide a reliable location, and counsel did not have a meaningful opportunity to determine that Petitioner had allegedly been booked into Pickens County only minutes earlier. Under these facts, this Court may retain jurisdiction because Petitioner's immediate custodian and exact district of confinement were effectively unknown due to ICE's transfer activity.

Respondents should not be permitted to use a five-minute, government-created timing issue as a jurisdictional trap. The purpose of the district-of-confinement rule is to identify the court with practical authority over the custodian, not to reward rapid transfers that prevent counsel from filing in the correct district. Where ICE moves a detainee during the same afternoon that emergency habeas relief is being prepared, fails to provide reliable locator information, and then invokes the resulting uncertainty to seek dismissal, the Court may apply the unknown-custodian exception and proceed to adjudicate the Petition.

Alternatively, if the Court concludes that the unknown-custodian exception does not apply and that the Northern District of Alabama was the proper district at the

moment of filing, dismissal still is not warranted. Under 28 U.S.C. § 1631, when an action is filed in a court that lacks jurisdiction, the court shall, if it is in the interest of justice, transfer the action to a court in which it could have been brought at the time it was filed. Likewise, 28 U.S.C. § 1406(a) authorizes transfer rather than dismissal when a case is filed in the wrong district. These provisions exist to avoid needless dismissal where transfer will preserve the filing date, prevent duplication, and allow the case to be heard in the proper forum.

If Respondents' timeline is accepted, then the Northern District of Alabama is a district in which this action could have been brought at the time of filing because Respondents contend Petitioner had arrived at Pickens County Detention Center minutes before the Petition was filed. Ayala Decl. ¶ 10; ECF Doc. 11 at 4, 6–8. Transfer would preserve the original filing date, avoid duplicative litigation, conserve judicial and party resources, and prevent prejudice while Petitioner remains in ICE custody. Dismissal would serve no meaningful purpose and would only delay review of the legality of Petitioner's detention.

Respondents, through AUSA Wadsworth, have indicated that they do not oppose transfer to the Northern District of Alabama, while reserving the right to object to that court's jurisdiction or venue and to raise any other appropriate defenses. Petitioner likewise does not oppose transfer and affirmatively requests that, if this Court declines to retain jurisdiction under the unknown-custodian exception, it transfer this action—or at minimum the habeas claim—to the United States District Court for the Northern District of Alabama rather than dismissing it.

The Court may also transfer without resolving Respondents' remaining arguments. If the Court determines that the Northern District of Alabama is the proper district under *Padilla*, the transferee court can address mootness, voluntariness of the alleged waiver, cognizability, verification, and next-friend issues in the first instance. The appropriate result is therefore either retention of jurisdiction under the unknown-custodian exception or transfer in the interest of justice—not dismissal.

## VII. ANY VERIFICATION OR "NEXT FRIEND" ISSUE HAS BEEN OR CAN BE CURED

Respondents argue that the Petition is defective because it was not personally verified by Petitioner and because any "next friend" has not been properly established. But 28 U.S.C. § 2242 expressly allows a habeas petition to be signed and verified either by the detained person or by "someone acting in his behalf." At filing, Petitioner was being moved between facilities and was practically inaccessible. Family members and associates acted to secure counsel on his behalf during this period, and counsel verified the petition based on available information.

Any technical defect has now been or will be cured by Petitioner's own sworn declaration and his willingness to testify live. Since filing the Petitioner, undersigned counsel has spoken directly with Petitioner and received his agreement for legal representation in this matter. Petitioner confirms that he is detained, challenges the legality of his arrest and custody, disputes the voluntary-departure paperwork, and confirms that he wishes to proceed with this action. If the Court desires more formal

verification, the appropriate remedy is to permit supplementation or amendment—not dismissal. Petitioner stands ready to execute a formal verification and to testify, if necessary, to confirm that he authorizes this litigation.

## VIII. REQUESTED RELIEF

For the foregoing reasons, Petitioner respectfully requests that the Court:

1. Deny Respondents' Motion to Dismiss;
2. If the Court retains jurisdiction and reaches the merits, grant the Petition and order Respondents to immediately release Petitioner from ICE custody;
3. Declare that Petitioner's warrantless arrest violated 8 U.S.C. § 1357(a)(2) because Respondents lacked individualized exigent circumstances showing that he was likely to escape before a warrant could be obtained;
4. Declare that the later-issued Form I-200 did not retroactively cure the unlawful warrantless arrest;
5. Declare that Petitioner did not knowingly, voluntarily, or intelligently accept voluntary departure, and that any voluntary-departure paperwork does not waive his habeas rights or moot this action;
6. Order Respondents to rescind, revoke, or rescind the purported voluntary departure and cease relying on it as a basis for detention or removal;
7. Enjoin Respondents from removing Petitioner from the United States while this case remains pending and while disputes over voluntariness and withdrawal of voluntary departure remain unresolved;

8. In the alternative to immediate release, order a prompt bond hearing under 8 U.S.C. § 1226(a), with DHS bearing the burden to justify continued detention through individualized evidence, and specify that any release conditions be individualized and not categorically imposed;
9. If the Court concludes that venue or habeas jurisdiction is defective because Petitioner was allegedly in Pickens County when the Petition was filed, transfer this action to the United States District Court for the Northern District of Alabama pursuant to 28 U.S.C. §§ 1406(a) and/or 1631 rather than dismissing it; and
10. Grant all further relief the Court deems just and proper.

Respectfully submitted,

Dated: May 28, 2026

*/s/ Karen Weinstock*
Karen Weinstock
Attorney for Petitioner (pro hac vice)
Weinstock Immigration Lawyers, P.C.
1827 Independence Square
Atlanta, GA 30338
Phone: (770) 913-0800
Fax: (770) 913-0888
kweinstock@visa-pros.com

**CERTIFICATE OF SERVICE**

I certify that on May 28th, 2026, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will automatically send e-mail notification of such filing to Respondents' attorney(s) of record.

*/s/ Karen Weinstock*
Karen Weinstock
Attorney for Petitioner (pro hac vice)
Weinstock Immigration Lawyers, P.C.
1827 Independence Square
Atlanta, GA 30338
Phone: (770) 913-0800
Fax: (770) 913-0888
kweinstock@visa-pros.com